UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CONSTITUTION TRAIL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.   09-cv-1058<br>)<br>)<br>)<br>)<br>) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant Starbucks Corporation's Amended Motion for Summary Judgment (Doc. 18). On August 20, 2010, Defendant filed its original Motion for Summary Judgment (Doc. 17). On August 24, 2010 it filed its Amended Motion, with the only difference being the inclusion of Defendant's attorney's electronic signature. (Doc. 18 at 12).[1] On September 13, 2010, Plaintiff filed its Memorandum in Opposition to Defendant's Amended Motion for Summary Judgment (Doc. 19) and on September 27, 2010 Defendant filed its Reply (Doc. 20). For the following reasons, Defendant's Amended Motion for Summary Judgment is GRANTED.[2]

---

[1] Because Defendant has filed an Amended Motion for Summary Judgment, its original Motion (Doc. 17) has been rendered MOOT.

[2] The Court notes that oral argument has been requested by the parties. Because the Court finds that it can determine this matter based upon the record before it, in the interests of judicial efficiency it will not hear oral argument on the matter.

# FACTUAL BACKGROUND[3]

Plaintiff, Constitution Trail, LLC, is a Nebraska limited liability company in the business of providing a wide range of real estate services to customers and partners throughout the Midwest. (Doc. 18 ¶1; Doc. 1 ¶ 7). Defendant, Starbucks Corporation, is a Washington corporation which operates retail cafes and coffee houses throughout the United States. (Doc. 18 ¶ 2). On or about August 23, 2007, the two companies entered into a commercial lease ("Lease") for retail space in a multi-tenant shopping center commonly known as "Constitution Trail Centre," located in Normal, Illinois. (Doc. 18 ¶ 3).

The Lease provided that its term ("Lease Term") would not commence until Plaintiff completed certain work on the premises.[4] (Doc. 18 ¶ 4). The tasks to be completed were enumerated in Exhibit C attached thereto. (Doc. 18 Exh. A). At the time the Lease was entered into, the parties agreed that Plaintiff's work would be completed by December 1, 2007, and that date was set as the "Scheduled Delivery Date." (Doc. 18 ¶ 5). Section 4.3 of the Lease provided that if Plaintiff had not completed its work within 14 days of the Scheduled Delivery Date, then it must pay Defendant liquidated damages in the amount of $500 per day from the Scheduled Delivery Date until its work was actually completed. (Doc. 18 ¶ 6). While the

---

[3] These background facts reflect the Court's determination of the undisputed facts, unless otherwise noted. Facts that are omitted are immaterial; if an included fact is immaterial to the Court's determination, this will be noted.

[4] Plaintiff contends that the contractual obligations between the parties were in effect upon execution of the Lease on August 23, 2007. (Doc. 19 ¶ 21). The Court finds that this is true for certain obligations but not for others. The Court will make clear whether an obligation arose as of the execution of the Lease or as of the commencement of the Lease Term if and when it is relevant to the instant disposition.

liquidated damages could be avoided if the delay was caused by a Force Majeure Event, as defined in Section 23.17 of the Lease, any such delay could only be up to 45 days, or until January 15, 2008. (Doc. 18 ¶ 9). Section 23.17 provided that a Force Majeure Event would not be deemed to have commenced until 10 days before the party claiming a right or defense arising therefrom gave written notice to the other party. (Doc. 18 ¶ 10). Finally, the Lease provided that if delivery had not taken place within 90 days of the Scheduled Delivery Date, or by February 29, 2008, Plaintiff had the option to terminate. (Doc. 18 ¶¶ 13-14). This provision was not qualified by the occurrence or non-occurrence of any Force Majeure Event. (Doc. 18- at 4).

On September 18, 2007 Defendant submitted its permit application to the Town of Normal.[5] (Doc. 20-2). As of December 15, 2007, Plaintiff had not completed the work assigned to it pursuant to the Lease, nor had it issued any notice of a Force Majeure Event to Defendant prior to that date. (Doc. 19 ¶¶ 8 & 11).[6] On

---

[5] Although Plaintiff states in its Statement of Undisputed Facts that "[Defendant's] architect had not delivered the MEPs to the City of Normal as of September 19, 2007," the deposition testimony to which it cites for support concerns a Notice of a Force Majeure Event and has nothing to do with the date Defendant submitted its plans to the Town of Normal. (See 19-2 at 24:18-25:17). Nor can the Court find any other evidence in the record submitted by Plaintiff to support this assertion. Local Rule 7.1(D)(2)(b)(5) provides that each fact alleged in response to a motion for summary judgment must be supported by evidentiary documentation referenced by specific page. Plaintiff has not supported its allegation with any evidentiary documentation.
   On the other hand, Defendant has submitted an affidavit from Mr. Greg Treomel, Director of Inspections for the Town of Normal, stating that Defendant submitted its Commercial Building Permit Application on September 18, 2007. (Doc. 20-2 at 1).

[6] While Plaintiff disputes whether these allegations are relevant and the exact date on which it admitted that the premises were not completed and delivered to

3

February 4, 2008, the Town of Normal issued a building permit for the premises. (Doc. 19 ¶ 26). Sometime in late February, an issue arose regarding the height of the ceiling; whereas Defendant's plans called for 12' ceilings, only 11' ceilings were possible. (Doc. 19 ¶¶ 28 & 32). Defendant approved the 11' ceilings on February 29, 2008. (Doc. 19 ¶ 32). After receiving Defendant's approval, Plaintiff's project manager gave his general contractor notice to proceed with the construction, directing him to work overtime to complete the work as soon as possible. (Doc. 19 ¶ 32).

On March 5, 2008, Defendant sent its construction project manager to take photographs of the premises. (Doc. 18-D at 1). The photograph taken depicts the interior of a building with, amongst other things, incomplete flooring, incomplete ductwork, and incomplete drywall. (Doc. 18 at 7). On March 12, 2008, Defendant sent Plaintiff a Notice of Termination pursuant to Article 4.3 of the Lease. (Doc. 19 ¶ 19).[7] This Notice of Termination included a list of the items that Plaintiff had failed to complete in a timely manner. (Doc. 18-E).[8]

---

Defendant, Plaintiff actually admits that the premises were not completed or delivered as of March 3, 2008, making it impossible for them to have been completed and delivered two and a half months prior. Further, while Plaintiff claims that a Notice of Force Majeure Event may have been issued by a person other than Darren Hicks, who was the project manager for Plaintiff in the underlying action, it has put no evidence on the record that such a Notice actually exists absent speculation that one potentially could have been issued by someone else. (See Doc. 19 ¶ 11).

[7] While Plaintiff disputes the underlying motivations for this letter, the document itself states that the Lease was terminated for failure to deliver the premises within 90 days of the Scheduled Date of Delivery. (Doc. 18-E).

[8] At some point prior to the Notice of Termination Letter, Defendant's broker also informed Plaintiff's project manager that Defendant planned to terminate the lease as it was "on [his] list". (Doc. 19 ¶ 35). The parties do not indicate, and thus the Court cannot determine on what date this communication took place.

On February 13, 2009, Plaintiff filed suit in this Court alleging breach of contract, breach of lease, and breach of the duty of good faith and fair dealing. (Doc. 1). In addition to its Answer, Defendant filed a counterclaim against Plaintiff for breach of contract and sought, *inter alia*, all costs incurred in connection with the Lease, liquidated damages under the Lease, and attorneys' fees. (Doc. 5). Defendant now seeks summary judgment in its favor on both Plaintiff's claims and its own counterclaim.

## **LEGAL STANDARD**

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In ruling on a motion for summary judgment, the court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The court draws only reasonable inferences. *Id.*

It is not the court's function to scour the record in search of evidence to defeat a motion for summary judgment. Instead, the court relies on the non-moving party to identify the evidence which creates an issue of triable fact. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (*quoting Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). Further, mere conclusory allegations are not enough, the non-

5

movant must "come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts," such matters must be left for the jury. *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).

## DISCUSSION

Plaintiff does not contend that it completed its obligations by either the December 1, 2007, or the February 29, 2008 deadlines. Rather, Plaintiff argues that Defendant could not rely on these deadlines to terminate its agreement pursuant to Section 4.3 of the Lease due to the doctrines of estoppel and waiver. (Doc. 19 at 12-14). Plaintiff also asserts that Defendant terminated the lease for pretextual reasons, and thus summary judgment in its favor is not appropriate.

### I. Doctrine of Estoppel

Plaintiff's first argument in opposition to summary judgment is that Defendant is estopped from relying upon the Scheduled Delivery Date of December 1, 2007, because Defendant's own acts and omissions caused it to be impossible for the work to be completed by that date. (Doc. 19 at 12). This argument hinges on Plaintiff's assertion that Defendant did not deliver its plans, including its mechanical, electrical, and plumbing specifications ("MEPs"), to the Town of Normal

6

in a timely fashion. However, Plaintiff points the Court to no evidence in the record to support this assertion. As previously discussed, Plaintiff has not supported its conclusory allegation that Defendant failed to deliver its plans to the Town of Normal prior to September 19, 2007.[9] Defendant, on the other hand, has provided the affidavit of the Director of Inspections for the Town of Normal, stating that Defendant submitted its Commercial Building Permit Application on September 18, 2007. (Doc. 20-2). Because Plaintiff has not put forward any evidence that Defendant failed to timely submit its plans to the Town of Normal, it has no argument that Defendant is, for that reason, estopped from relying on the Scheduled Delivery Date of December 1, 2007, and 90 day extension therefrom. *See Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993) ("a party seeking to avoid summary judgment may not establish a dispute of material fact with unsubstantiated assertions in its factual summary or in affidavits.").

**II.    Waiver**

Plaintiff also claims that Defendant cannot rely upon the passage of the Lease deadline to terminate the Lease because Defendant waived that deadline when it approved the 11' ceilings on February 29, 2008, the date the deadline was set to expire. Waiver is the voluntary and intentional relinquishment of a known right. *Wells v. Minor*, 578 N.E.2d 1337, 1346 (Ill. App. Ct. 1991). Waiver can be either express or implied. *Id.* Implied waiver occurs where "the conduct of the person against whom waiver is asserted is inconsistent with an intent to enforce" a

---

[9] While Plaintiff's have established that the Town of Normal did not issue a building permit until February 4, 2008, they have not put forward any evidence that this was due to any fault of the Defendant.

right under the contract. *Id.* This principle "support[s] the notion that a party to a contract may not lull another into a false assurance that strict compliance with a contractual duty will not be required and then sue for non-compliance." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979). The Court's analysis is to be focused on the intent of the party claimed to have waived its known right. *Id.* "Where there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of waiver is a matter of law." *Wells*, 578 N.E.2d 1346; *see also Saverslak*, 606 F.2d 213 n. 9. On the other hand, "where the material facts are in dispute, or where reasonable minds might differ in the inferences to be drawn from undisputed facts, the existence of waiver . . . is a question of fact." *Lake County Grading Co. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1119 (Ill. App. Ct. 1995).

Here, all material facts appear to be undisputed, and are as follows: 1) the Lease provided an absolute deadline of 90 days following the Scheduled Delivery Date (or February 29, 2008), after which Defendant had the option to terminate the Lease[10] (Doc. 19 ¶ 14); 2) approximately one week prior to this deadline, Plaintiff informed Defendant that there was an issue with the ceiling heights and recommended that they be placed at 11' rather than 12' (Doc. 19 ¶ 28); 3) on February 29, 2008, Defendant responded to Plaintiff and approved the 11' ceilings (Doc. 19 ¶ 32); 4) based upon this approval, Plaintiff's project manager told the general contractor to proceed with the construction and directed him to work

---

[10] The relevant language reads: "If the Commencement Date does not occur within ninety (90) days after the Scheduled Delivery Date for any reason whatsoever, [Defendant], at its option, may terminate this Lease upon written notice to [Plaintiff]." (Doc. 18-A at 4).

8

overtime to complete the work as soon as possible (Doc. 19 ¶ 32); 5) on March 5, 2008, Defendant's architect went to take photographs of the premises (Doc. 18-D at 1); 6) at some point after this date Plaintiff's project manager was informed by Defendant's broker that Defendant would be terminating the contract (Doc. 19 ¶ 35); 7) on March 12, 2008 Defendant sent Plaintiff a letter terminating the lease for failure to comply with the February 29, 2008 deadline (Doc. 19 ¶ 19).

Again, the question is whether, by approving the 11' ceilings on February 29, 2008, Defendant intended to relinquish its option to terminate the Lease if delivery had not been completed within ninety days of the Scheduled Delivery Date. The Court finds that based upon the undisputed facts, Defendant did not intend to relinquish this option. While the approval of the 11' ceilings indicates that Defendant intended to allow construction to continue as of February 29, 2008, and thus that it did not yet intend to exercise its option, it does not indicate that Defendant intended to waive this option altogether.[11] The lack of such intent is made clear by the fact that the termination of the Lease was on Defendant's broker's "list" in the beginning of March,[12] and—even more so—by the fact that Defendant never accepted Plaintiff's performance, but instead exercised its option to terminate less than two weeks later, on March 12, 2008. *See Nibbe v. Brauhn*, 24

---

[11] While not binding, the Court finds it noteworthy that in *Pellicica v. United States*, the United States Court of Claims held that a nonbreaching party does not waive its right to terminate based upon the other party's default by not immediately asserting such right. 525 F.2d 1035, 1043-44 (Ct. Cl. 1975). Instead, it held that fairness required that the nonbreaching party be given a reasonable time within which to determine whether a termination would be in its best interest. *Id.* at 1044.
[12] As discussed previously in footnote 8, the exact date that this occurred is not clear from the record before the Court. However, the exact date is not dispositive here, as this fact merely negates an argument that Defendant intended to waive its right to terminate.

9

Ill. 268 (1860) (holding that a party waived his right to enforce a time of performance provision when he allowed work to proceed after the date for performance *and* accepted the work at a future date).

In reaching this determination, the Court has considered various cases holding, in the construction context, that an implied waiver has occurred. For instance, in *National Bedding Co., LLC v. American Realty Capital, LLC*, 2010 WL 3842370, at *7 n. 8 (N.D. Ill. Sept. 27, 2010), the United States District Court for the Northern District of Illinois also considered whether a nonbreaching party may have waived its alleged right to terminate a construction agreement due to the other party's failure to substantially complete performance by a contractually agreed upon date. In that case, the original date for Substantial Completion was December 21, 2007. *Id.* at *2. By November of 2007, it was clear that performance would not be complete on time, and the nonbreaching party expressly indicated that it did not expect substantial performance to be complete until the second quarter of 2008. *Id.* at *3-4. It was not until July 16, 2008, after the breaching party had completed performance, and the nonbreaching party lost its financing, that the nonbreaching party sought to enforce its right to terminate due to the fact that performance was not complete in December of 2007. *Id.* at *4. Here, Defendant never indicated that it would accept more than a 90 day delay in the Scheduled Delivery Date, and it waited only 12 days (as opposed to over 6 months) after its option to terminate arose to enforce that option.

Nor is this a case such as *Wells v. Minor*, 578 N.E.2d 1337 (Ill. App. Ct. 1991), cited by Plaintiff, where the nonbreaching party accepted the breaching party's

deficient performance via payment and only later sought to assert its contractual right to terminate. Here, Defendant never accepted Plaintiff's performance, but instead exercised its right to terminate within two weeks. Accordingly, the Court finds that Defendant did not waive its option to terminate the Lease pursuant to Section 4.3.

### III. Pretextual Termination

Finally, Plaintiff argues that there are genuine issues of material fact as to whether Defendant terminated the Lease for pretextual reasons. (Doc. 19 at 14). While there may be a genuine issue of fact as to Defendant's reasons for termination, they are not material. The Seventh Circuit has held that "[i]f a party has a legal right to terminate a contract . . . its motive for exercising that right is irrelevant." *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 233 F.3d 585, 589 (7th Cir. 2000). Accordingly, because Defendant had the legal right to terminate the Lease pursuant to Section 4.3, its motive for doing so is immaterial as a matter of law.

#### CONCLUSION

For the foregoing reasons, Defendant's Amended Motion for Summary Judgment (Doc. 18) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff as to both Plaintiff's Complaint and Defendant's Counterclaim. Defendant is directed to submit evidence of its damages, including liquidated damages and expenses pursuant to Section 4.3 and reasonable attorneys' fees pursuant to Section 23.16 of the Lease, by March 4, 2011. Plaintiff will then be given two weeks, or until March 18, 2011, to respond. IT IS SO ORDERED.

Entered this 7th day of February, 2011.

                     s/ Joe B. McDade
                     JOE BILLY McDADE
                United States Senior District Judge